AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The residence located at 1396 Summit St, Columbus, Ohio 43201, including the residential dwelling, curtilage, detached structures, any/all vehicles located therein.

Case No. 2:19-mj-799

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Knowingly or intentionally attempt to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance |
| 18 U.S.C. § 1343. | and devise or intend to devise any scheme or artifice to defraud. |

The application is based on these facts:

SEE AFFIDAVIT ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's Signature*

Justin Myers, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/04/2019

_____
*Judge's signature*

City and state: Columbus, Ohio    Kimberly A. Jolson, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
## DESCRIPTION OF LOCATION TO BE SEARCHED

The residence of 1396 Summit Street, Columbus, Ohio 43201 is a multi-story single-family residence. The numbers 1396 are posted directly to the right of the front door to the residence. The outside walls to the residence consist of light blue colored siding. The residence contains a detached two-vehicle garage, located at the rear of the residence. The residence is located within the Southern District of Ohio.

## ATTACHMENT B
## PARTICULAR THINGS TO BE SEIZED
## (1396 SUMMIT STREET, COLUMBUS, OHIO 43201)

All fruits, evidence and instrumentalities, as listed below of criminal offenses against the United States, that is associated with Title 21 U.S.C. § 841 (knowingly or intentionally attempt to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance) and Title 18 U.S.C. 1343, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. Those items include:

(a) Log books, records, passwords, payment receipts, notes, and/or customer lists, ledgers and other papers relating to the transportation, ordering, purchasing, processing, storage and distribution of controlled substances, including all records of income and expenses;

(b) Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and other items relating to travel to obtain and distribute narcotics and narcotics proceeds. Evidence of such travel is often times maintained by narcotics traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls and records of long-distance telephone calls;

(c) Books, records, invoices, receipts, records of real estate transactions, auto titles, financial statements, bank statements, cancelled checks, deposit tickets, passbooks, money drafts, withdrawal slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the

obtaining, secreting, transfer, concealment, and/or expenditure of money. These records should include both records of drug trafficking and legitimate business operations;

(d) Any and all electronic equipment capable of storing data and/or communications, such as, but not limited to, computers, hard drives, thumb drives, SD cards, mobile phones, cold storage cryptocurrency devices, and any stored electronic data and/or communications contained therein to be retrieved through forensic analysis;

(e) Photographs of co-conspirators, assets and/or narcotics, including still photos, negatives, video-tapes, films, slides, undeveloped film and the contents therein;

(f) Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, and fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

(g) Any and all records associated with the use of cryptocurrency, to include, but not limited to, account records, passwords, recovery seed phrases and electronic wallets/addresses;

(h) Indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including, but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, titles and vehicle registrations;

(i) The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property may be maintained;

(j) Any and all open and unopened U.S. Mail and other open and unopened envelopes/parcels;

(k) Any and all computers and information and/or data stored in the form of magnetic or electronic coding on computer media, on media capable of being read by a computer, or other recorded media. This includes, but it is not limited to, computer software, software manuals, tapes, CD's, diskettes, stored electronic communications, taped messages, electronic date/memo minders, address books, word processors, passwords, backup storage devices, audio tape and the contents therein, containing the related information generated by the aforementioned electronic equipment.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES FOR A WARRANT )
AUTHORIZING THE SEARCH OF 1396 )
SUMMIT STREET, COLUMBUS, OHIO 43201, )
INCLUDING THE RESIDENTIAL DWELLING, )
CURTILAGE, DETACHED STRUCTURES, )
AND ANY/ALL VEHICLES LOCATED THEREIN. )

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR TRACKING WARRANT PURSUANT TO 18 U.S.C. § 3117 AND FED. R. CRIM. P. 41

I, Homeland Security Investigations (HSI) Columbus, Ohio, Special Agent (SA) Justin Myers, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I submit this affidavit in support of an application for a document warrant to search the residence located at 1396 Summit Street, Columbus, Ohio 43201, which includes the residential dwelling, curtilage, detached structures and any/all vehicles located therein, hereafter referred to as the TARGET RESIDENCE, as described in Attachment A, believing evidence, fruits, and instrumentalities of violations associated with Title 21 United States Code (U.S.C.) Section (§) 841(a)(1), knowingly or intentionally attempt to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance and Title 18 U.S.C. § 1343, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, are located within TARGET RESIDENCE. I request authority to search the entire TARGET RESIDENCE for evidence,

1

fruits, and instrumentalities of the above violation, and seize those items for further examination to be conducted on and/or offsite as described in Attachment B.

2. I have been employed by HSI since June 2004. I gained experience through a Bachelor of Arts Degree in Criminology, a master's degree in Forensic Science, completion of the Federal Criminal Investigator Training Program (CITP) and completion of the HSI Investigations Academy. During CITP and the HSI Academy training, I was instructed in all phases of criminal investigation such as: Criminal Law, Search and Seizure, Field Enforcement Techniques, Firearms Proficiency, and Interviewing and Evidence. I have completed the HSI Cyber Undercover Training Course and the Advanced Cryptocurrency and Darknet Training Course. I am responsible for enforcing federal criminal statutes including, but not limited to, controlled substance violations, pursuant to Title 21 U.S.C. § 841 and Title 18 U.S.C. § 1343.

3. While employed as a Special Agent, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, controlled substance violations. During the investigation of these cases, I have executed, or participated in the execution of, numerous search warrants and seized evidence of these violations. The facts set forth in this affidavit are based on my knowledge, experience, and investigation, as well as the knowledge, experience, and investigative findings of others. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I did not withhold any information or evidence that would negate probable cause. I have set forth only the facts believed to be necessary to establish probable cause that the TARGET RESIDENCE contains evidence associated with violations of Title 21 U.S.C. §§ 841 and 846. The TARGET RESIDENCE is located within the Southern District of Ohio.

## Background of Investigation and Probable Cause for Tracking Warrant

4. On June 19, 2019, HSI Columbus received information from HSI Detroit, Michigan investigators regarding an individual using the online moniker "STEVENNICKS1," who

2

attempted to purchase a controlled substance through the Darknet. "STEVENNICKS1" attempted to purchase the controlled substance directly from an HSI Detroit government-controlled Darknet account that was advertising controlled substances for sale. Investigators never actually sent the controlled substances to "STEVENNICKS1." HSI Detroit was conducting a cyber investigation to identify various individuals using the Darknet market Empire Market to acquire controlled substances. Empire Market is a marketplace on the Darknet used to sell and purchase items, mostly controlled substances and other contraband.

5. On June 18, 2019, "STEVENNICKS1" purchased one hundred (100) "Teva B974 Adderall Pressed Replica Pills With Stronger Effect" directly from the HSI Detroit government-controlled account. "STEVENNICKS1" used Bitcoin (BTC), a digital currency, to purchase the controlled substance for $410.00 (0.04207309 BTC). The Empire Market sale number is 397571. During the transaction, "STEVENNICKS1" provided the following shipping information: Justin CLIFFORD, 1396 Summit Street, Columbus, Ohio 43201 (TARGET RESIDENCE). According to HSI Detroit investigators, those individuals who purchase "Adderall Pressed Replica Pills With A Stronger Kick" know that they are purchasing pressed Methamphetamine. Both Adderall and Methamphetamine are Schedule II Controlled Substances.

6. HSI Detroit investigators were able to see a current summary of the buyer history on Empire Market associated with "STEVENNICKS1" during the transaction. There were 24 positive reviews listed for "STEVENNICKS1," meaning that "STEVENNICKS1" has either successfully purchased or sold at least 24 items in the past. The summary showed the number of reviews but did not list a description for each transaction. The total dollar amount associated with the transactions was $68,006.40.

7. On July 09, 2019, other investigators and I conducted surveillance at the 1396 Summit Street address. At approximately 1615 hours, investigators observed CLIFFORD exit the

residence, enter his 2015 grey Hyundai Genesis bearing State of Ohio license plate number HUL2869 and VIN: KMHGN4JEXFU095973, and depart the area.

8. On July 10, 2019, United States Postal Inspection Service Inspector Mohamed Sabrah intercepted a domestic U.S. Postal Service Priority Mail parcel (tracking # 9405536897846932234313) scheduled to be delivered to CLIFFORD at the 1396 Summit Street address. After a law enforcement K-9 trained to detect controlled substances alerted to the parcel, Inspector Sabrah obtained a federal search warrant through the U.S. District Court, Southern District of Ohio, to open the parcel. The parcel contained a clear bag with approximately 60 grams of a white powdery substance. I used a TruNarc electronic testing device to conduct a presumptive test on the powder. The test indicated the presence of Cocaine, which is a schedule II-controlled substance.

9. On July 13, 2019, I received information from eBay associated with a subpoena sent for CLIFFORD's transaction records. eBay transaction records indicated CLIFFORD purchased six (6) "SNUFF BULLET ACRYLIC 1 GRAM and 2 GRAM BOTTLE SCOOP SPOON STYLE SET OF 2" on January 18, 2019. The item is used to extract small samples for testing. eBay transaction records also indicated that CLIFFORD purchased one (1) "MARQUIS Reagent Testing Kit - Prism Reagents (10mL) (DISCREET SHIPPING)" on March 29, 2019. The item is used to test an extracted sample for the presence of various controlled substances.

10. Other investigators and I observed CLIFFORD use his registered vehicle to drive to various gas stations/convenience stores in Columbus, Ohio that contain cryptocurrency (digital currency) ATMs on numerous occasions from July 2019 through September 2019. The cryptocurrency ATMS are owned by various companies. The cryptocurrency ATMs located at the gas stations/convenience stores are used to purchase various types of cryptocurrency. I know from experience that individuals often use cryptocurrency ATMs to purchase cryptocurrency, rather than using established online cryptocurrency exchanges, to attempt to conceal their identity when making the purchase. The cryptocurreny ATMs only require the customer to enter

4

a phone number for daily transactions totaling less than $1,500.00 per cryptocurrency ATM company. Any transactions totaling more than $1,500.00 per cryptocurrency ATM company require full identification using a state-issued identification card. CLIFFORD goes to multiple cryptocurrency ATMs in one day that are operated by different companies. He likely does so to stay under the $1,500.00 daily limit per cryptocurrency ATM company.

11. I sent subpoenas to the businesses that own the cryptocurrency ATMs that CLIFFORD visited. Though some results are still pending from a few of the businesses, initial results indicate that CLIFFORD uploaded $559,008.92 in cash into the cryptocurrency ATMs from August 2017 through August 2019. The businesses who have responded to date provided photos associated with the transactions. The photos were captured by the ATMs. I was able to use the photos provided to confirm the transactions were conducted by CLIFFORD. While conducting the transaction, CLIFFORD used false names, burner phone numbers and/or a counterfeit State of Ohio driver's license to register with the cryptocurrency ATMs. The cryptocurrency ATM businesses are lawfully registered money service business, which make it a federal crime to use them as a means of sending or receiving currency for the purpose of executing a scheme or artifice contrary to United States laws.

12. The records obtained to date from the cryptocurrency ATM businesses included the blockchain associated with each of the cryptocurrency ATM transactions. The blockchain includes the electronic addresses to where CLIFFORD sent the cash he uploaded into the machines. I used available law enforcement tools to determine that he sent the cash to various cryptocurrency online exchanges outside of the State of Ohio and/or the United States. CLIFFORD also sent some of the cash directly to various Darknet markets, which cater to selling various drugs.

13. I requested wage records from the Department of Labor (DOL) associated with CLIFFORD for the year's 2018 and 2019. DOL records indicate CLIFFORD reported

$62,059.08 during 2018 and $15,000.00 during 2019. The amounts above are inconsistent with the large amount of cash CLIFFORD has uploaded into the cryptocurrency ATMs.

14. On July 19, 2019, other investigators and I observed CLIFFORD enter the U.S. Post Office located at 6400 emerald Parkway, Dublin, Ohio 43016. CLIFFORD departed the post office with a few pieces of paper in his hand. According to U.S. Postal Office records, CLIFFORD inquired about opening a PO Box at the location. U.S. Post Office employees informed CLIFFORD that he was required to close his active PO Box at the 715 Shawan Falls Drive, Dublin, Ohio 43017 post office location before opening a new PO Box at the 6400 emerald Parkway post office location.

15. According to U.S. Post Office records, a refund application was submitted to the 715 Shawan Falls Drive post office location on July 19, 2019 for the discontinuation of a PO Box account that was associated with the account CLIFFORD was inquiring about. The company name Portland Company at 545 Metro Place South, Suite 100, Dublin, Ohio 43017 was listed on the refund application. I determined an individual by the name of Bradley BLOCK closed the account.

16. On July 19, 2019, a subscription was purchased through an online application for a PO Box associated with the 6400 emerald Parkway post office location. The contact information listed on the application was Portland Company at 545 Metro Place South, Dublin, Ohio 43017 and the name Bradley BLOCK. The PO Box is setup to automatically forward all parcels arriving at the PO Box to another PO Box in Hood River, Oregon. I know from experience that those individuals receiving controlled substances often use multiple PO Boxes to create layers between them and their residence to avoid detection by law enforcement.

17. I determined that the address 545 Metro Place South, Dublin, Ohio 43017 is associated with the company Regus. Regus leases multiple small office spaces at that location for various businesses. On July 27, 2019, I received information from Regus associated with a subpoena sent requesting any information pertaining to the individual's Justin CLIFFORD and Bradley

6

BLOCK and the company name Portland Company. Regus did not have any records associated with the individual Bradley BLOCK or the company Portland Company. Regus did have a record dated July 22, 2015 listing an inquiry from an individual regarding office space. The individual's contact information was listed as Justin CLIFFORD at 614-218-3978. The record was for an inquiry only. No office space was rented. A subpoena confirmed that the phone number 614-218-3978 is associated with CLIFFORD.

18. I ran the company name Portland Company through the Ohio Secretary of State website. The company name Portland Company does exist in Ohio, but not at the address listed on the PO Box application. CLIFFORD nor BLOCK are agents/incorporators associated with the business.

19. From August 13-22, 2019, CLIFFORD received three U.S. Postal mail parcels at his 1396 Summit Street residence shipped via Bitcoin (cryptocurrency) postage. I know from experience that individuals shipping controlled substances through U.S. Mails often use cryptocurrency to purchase postage to avoid detection by law enforcement.

20. On October 2, 2019, other investigators and I established surveillance on the front of the residence located at 1396 Summit Street, Columbus, Ohio 43201. At approximately 1559 hours, a male subject on a bicycle, later identified as Andres RIVAS, entered the residence with a black backpack. I observed CLIFFORD answer the door and let RIVAS inside. At approximately 1510 hours, RIVAS exited the residence with a black backpack. RIVAS mounted his bicycle and road north on Summit Street, then west on east 8th Avenue in Columbus.

21. At approximately 1515 hours, Franklin County Sheriff's Office K-9 Deputy Jon Dillon conducted an investigative stop on RIVAS for traveling west on East 8th Avenue in the roadway and against traffic. Deputy Dillon reported that RIVAS stated he met with a friend on Summit Street to assist him with creating an online cannabinoid (CBD)-based website. RIVAS provided Deputy Dillon with a business card for "Cap City CBD." RIVAS gave consent to search his

7

backpack. The backpack contained a package of gummy candy, labeled as CBD edibles. The edibles had a sticker on them stating the Tetrahydrocannabinol (THC) content was zero.

22. According to Drug Enforcement Administration (DEA) database records, the DEA Financial Investigations Group, and the Phoenix, Arizona Police Department's Commercial Narcotic Interdiction Unit, seized $22,660.00 in U.S. Currency from RIVAS at the Phoenix Sky Harbor Airport during the year 2013 for violation of bulk currency smuggling laws. A State of Arizona search warrant for the RIVAS' cell phone was executed and revealed numerous pictures of marijuana and money "fanned" and held by individuals to include RIVAS. The search of the phone also revealed numerous text messages showing drug trafficking activity. A narcotic detection dog alerted to the presence of the odor of narcotics on the seized currency. State of Ohio database records revealed RIVAS was arrested by members of the Columbus, Ohio Police Department during the year 2010 and charged with felony possession of drugs.

23. On October 03, 2019, the United States Postal Inspection Service intercepted two parcels scheduled to be delivered to CLIFFORD at the SUBJECT PREMISES. Postal Inspectors ran a narcotics-detecting K-9 around the parcels. The K-9 alerted to both parcels. Postal Inspectors obtained a federal search warrant through the United States District Court, Southern District of Ohio, to search the contents of both parcels. Each parcel contained six bottles of a clear liquid. I used a TruNarc electronic drug testing device to conduct a presumptive test on the liquid. The liquid tested positive for Gamma-Hydroxybutyrate (GHB), which is a schedule I controlled substance. The contents of both parcels were seized. The total weight of all 12 bottle was 814 grams (0.814 liters).

24. Based upon all of the above facts, I believe that CLIFFORD is using TARGET RESIDENCE to operate a narcotics trafficking operation in which he is utilizing computers, the U.S. Mail, and crypto currency to facilitate the purchase and distribution of controlled substances and that there is probable cause that records and evidence of his on-going narcotics trafficking activities, as described in Attachment B, will be found inside TARGET RESIDENCE.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

25. Searches and seizures of evidence from computers and mobile computing devices commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

    a. Computer storage devices (like hard drives, CD's/DVD's, USB flash drives, flash memory, external hard drives, SD cards, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

    b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even experts in the forensic examination of computers and mobile computing devices to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since evidence on computers, mobile computing devices and electronic storage media is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

26. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving controlled substances where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In

addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

27. In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime(s).

## SEARCH METHODOLGY TO BE EMPLOYED

28. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a. Examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

    c. Surveying various files, directories and the individual files they contain;

    d. Opening files to determine their contents;

    e. Scanning storage areas;

    f. Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and/or

    g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

29. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic

tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## Conclusion

30. Based on the foregoing information, I believe that there is probable cause that CLIFFORD is associated with the Darknet online persona "STEVENNICKS1" and is using that online persona on the Darknet market Empire Market to purchase controlled substances. According to "STEVENNICKS1's" Empire Market transaction history revealed during the transaction associated with HSI Detroit, the total dollar amount associated with "STEVENNICKS1" transactions was $68,006.40. Based on experience in conducting Darknet investigations, I know that those 24 transactions are likely associated with controlled substances. I know that high dollar amount associated with the transactions is indicative of an individual who is distributing controlled substances for profit. I know that those individuals whom provide false identification to lawful money service businesses due so to conceal their identity, generally from law enforcement. I know that those individuals who possess large amounts of unexplained cash often obtain the cash through criminal means. I also know that individuals who distribute controlled substances often use their vehicle to transport the controlled substances to assist with distribution.

11

31. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. § 841(a)(1) and Title 18 U.S.C. § 1343 have been committed at TARGET RESIDENCE. There is also probable cause to search TARGET RESIDENCE, which is located within the Southern District of Ohio and described in Attachment A, for evidence, instrumentalities, contraband and/or fruits of these crimes further described in Attachment B. I therefore respectfully request that the Court issue a warrant authorizing the search of the TARGET RESIDENCE.

Justin B. Myers
Special Agent
Homeland Security Investigations

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 4TH DAY OF OCTOBER 2019.

Kimberly A. Jolson
United States Magistrate Judge
Southern District of Ohio

12